IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SOLID SYSTEMS CAD SERVICES,      §
                                 §
        Plaintiff,               §
                                 §
v.                               §      CIVIL ACTION NO. H-12-03176
                                 §
TOTAL RISC TECHNOLOGY, PTY.      §
LTD., TOTAL RISC TECHNOLOGY      §
GLOBAL LIMITED, and DOMENIC      §
ROMANELLI,                       §
                                 §
        Defendants.              §

MEMORANDUM AND ORDER

Pending are Defendants' Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (Document No. 20) and Plaintiff's Motion in the Alternative to Approve Alternative Service (Document No. 32). After considering the motions, responses, additional submissions, and applicable law, the Court concludes as follows.

I.   Background

This case involves a dispute over amounts allegedly owed to Solid Systems CAD Services ("Plaintiff") for the performance of computer services. In August 2009, Defendant Total Risc Technology Global Ltd. ("Global") entered into a Master Services Agreement with T-Systems Nederland B.V. ("T-Systems") under which Global

would perform computer services on behalf of T-Systems.[1] Subsequently, Domenic Romanelli ("Romanelli"), Chief Executive Officer of Global and Defendant Total Risc Technology, Pty. Ltd. ("TRT Pty."),[2] engaged Plaintiff, a Texas corporation headquartered in Houston, to perform work for T-Systems in Texas and throughout the United States.[3]  Plaintiff and Global negotiated to attain an agreement, but the drafted written contract ("the Key Agreement") exhibited by Defendants is unsigned by any party.[4]

Plaintiff began its work performing computer services for Defendants in late 2009.[5]  Defendants made payments to Plaintiff until April 2011, when Global's contract with T-Systems expired.[6] At that time, Defendants stopped making payments to Plaintiff, and Plaintiff contends that $1,187,271.26 remains due and unpaid on invoices for work performed by Plaintiff before Global's Master Services Agreement with T-Systems expired.[7]  Global is separately

---

[1] Document No. 10 ¶ 4.1 (2d Am. Complt.).

[2] Document No. 28 ¶ 3; Document No. 31, ex. 3 (Master Services Agreement, August 2009). Plaintiff alleges that both TRT Pty. and Global entered into the Master Services Agreement with T-Systems. Document No. 10 ¶ 4.1.  However, the August 2009 Master Services Agreement exhibited by Plaintiff states that it is between Global and T-Systems.  Document No. 31, ex. 3 at 1 of 32.

[3] Document No. 10 ¶ 4.2.

[4] Document No. 30-1, ex. C.

[5] Document No. 10 ¶ 4.3.

[6] Id. ¶ 4.6.

[7] Id. ¶ 4.7.

engaged in a dispute with T-Systems regarding payments due under the Master Services Agreement, which is being arbitrated in Germany,[8] and Defendants contend that they are not obligated to pay Plaintiff until after they receive payment from T-Systems.[9]

Defendants now move to dismiss Plaintiff's claims against Global for insufficient service of process and to dismiss all claims against all three Defendants for lack of personal jurisdiction.[10]  Plaintiff responds that its service on Global was sufficient,[11] but moves in the alternative for approval of alternative service[12]; and responds that the Court has jurisdiction over all Defendants.

## II. Motion to Dismiss for Insufficient Service of Process

### A. Standard

Under Federal Rule of Civil Procedure 12(b)(5), a Defendant can move to dismiss for insufficient service of process.  The party on whose behalf service was made bears the burden of establishing its validity.  Aetna Bus. Credit, Inc. v. Universal

---

[8] Document No. 28 ¶ 13, 47.

[9] Id. ¶ 13.

[10] Document No. 20.

[11] Document No. 31.

[12] Document No. 32.

*Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981). A district court "enjoys broad discretion in determining whether to dismiss an action for ineffective service of process." *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986).

Federal Rule of Civil Procedure 4(h)(2) provides that service on a foreign corporation may be made outside the United States "in any manner prescribed by Rule 4(f)" except personal delivery. FED. R. CIV. P 4(h)(2). Rule 4(f) allows service to be effected in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *Id.* 4(f)(1). The federal rules contemplate that a corporation can be served by delivering a copy of the summons and complaint to one of its officers. *Id.* 4(h)(1)(B).

The Hague Convention requires each signatory to designate a Central Authority to which requests for service will be sent. Hague Convention on the Service Abroad of Judicial and Extra-judicial Documents in Civil and Commercial Matters art. 2, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6338. The documents will be forwarded by the Central Authority to the party being served. *Id.* art. 5. As a ratified treaty, compliance with the Hague Convention is mandatory in all cases to which it applies. Volkswagenwerk Aktiengesellschaft v. Schlunk, 108 S. Ct. 2104, 2108 (1988).

4

B.   Analysis

Global   is   a   Chinese   corporation   with   offices   in   the
Netherlands,   Singapore,   Hong   Kong,   the   Philippines,   Malaysia,
Australia, and India.[13]  TRT Pty. is an Australian corporation with
offices only in Australia.[14]  Romanelli, an Australian citizen, is
the Chief Executive Officer of both companies.[15]  The two companies
also share a Chief Financial Officer, Paul Garufi.[16]

Australia   and   China   are   both   signatories   to   the   Hague
Convention.   On November 13, 2012, Plaintiff sent a Request for
Service, Summons, and copies of the Complaint to the Australian
Central Authority for service upon all three defendants.[17]   The
documents were to be served on Garufi and Romanelli.[18]  At the time
that Plaintiff filed its Response, the Australian Central Authority
had not yet informed Plaintiff whether service had been effected.[19]

---

[13] Document No. 28 ¶ 2; Document No. 10 ¶ 1.3; Document No. 31-
7.   See also Document No. 43-1 at 2 of 9 (Return of Service of
Summons indicating that Global was served through Paul Garufi at
its office in Australia).

[14] Document No. 28 ¶ 1; Document No. 10 ¶ 1.2.

[15] Document No. 28 ¶ 3; Document No. 10 ¶ 1.4.  Plaintiff also
alleges that Romanelli is the "major owner and/or sole owner" of
Global and TRT Pty.  Document No. 10 ¶ 4.10.

[16] Document No. 31 ¶ 26.

[17] Id. ¶ 26(a).

[18] Id.

[19] Id. ¶ 26(b).

Plaintiff has since filed documents demonstrating that service was made on Global through its Chief Financial Officer Paul Garufi at Global's registered office in Australia, and that such service was effected pursuant to the Hague Convention.[20]

Defendants mistakenly contend that Plaintiff must effect service through the Chinese Central Authority.[21]   *See* <u>Delta Constructors, Inc. v. Roediger Vacuum GmbH</u>, 259 F.R.D. 245, 248 (S.D. Miss. 2009) ("[T]he fact that [defendant] is a German corporation and that Germany is a signatory to the Hague Convention does not necessarily mean that [defendant] is entitled to receive all service of process at its home office in Germany."); <u>Trump Taj Mahal Assoc. v. Hotel Servs., Inc.,</u> 183 F.R.D. 173, 180-81 (D.N.J. 1998) (finding Canadian corporation was properly served through its corporate officer in London); *see also* <u>Marcantonio v. Primorsk</u>

---

[20] Document No. 43.  In response to the Court's Order of May 21, 2013, Plaintiff filed a certificate of service from the Supreme Court of New South Wales stating that service of a "Second amended original complaint" and "Amended Summons" was made on Paul Garufi, chief financial officer of Global, in conformity with Article Six of the Convention.  Document No. 43.  Plaintiff also produced copies of the summons and Second Amended Original Complaint referenced in the certificate.  Document No. 43-2.  Moreover, Global filed a stipulation on June 4 stating "[p]ursuant to footnote 4 in Judge Werlein's Order dated May 21, 2013, [Global] acknowledges that Sheriff's Officer Martin Keith Noble served Global with the Plaintiff's Second Amended Original Complaint on or about March 11, 2013."  Document No. 44.  Accordingly, the Court finds that service was made on Global pursuant to the request of the Australian Central Authority in accordance with the Hague Convention.

[21] Document No. 36 ¶¶ 12-14.

Shipping Corp., 206 F.Supp.2d 54, 58 (D.Mass. 2002) ("The country in which service is being made is the country whose laws must be obeyed, not the country of origin of the person or corporation being served.") (finding service in Canada on captain of ship owned by Russian shipping company was improper because plaintiff did not follow the provisions of the Hague Convention in Canada). Plaintiff has established that it caused Global to be lawfully served in Australia pursuant to the Hague Convention, and Defendants' Motion to Dismiss for Insufficient Service of Process is therefore DENIED; and Plaintiff's Motion in the Alternative to Approve Alternative Service is DENIED as moot.

### III.  Motion to Dismiss for Lack of Personal Jurisdiction

### A.  Standard

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).  Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a non-resident defendant comports with federal constitutional due process requirements.  Id.

The due process inquiry focuses upon whether the non-resident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific; and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. *See* Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant who has systematic and continuous contacts with the forum. *See* id. at 1872-73.

When an evidentiary hearing on the question of jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203-04 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be

taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *See* Alpine View, 205 F.3d at 215.

B. Analysis

Plaintiff does not argue that the Court has general jurisdiction over Defendants, but issue is joined on whether it has specific jurisdiction over each Defendant.

1. Global's Minimum Contacts

In analyzing whether a party purposefully availed itself of a forum in a breach of contract case, the court "must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999). (quoting Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985)). Entering into a contract with an out-of-state party is not sufficient on its own to establish minimum contacts. Id. Instead, a non-resident defendant who chooses to contract with a resident plaintiff "is considered to have purposefully availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that [the resident plaintiff] would in fact perform a material part of its contractual obligations within the forum state. Under such circumstances, the

9

defendant's contact with the forum cannot be deemed to be merely fortuitous." Miss. Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1008 (5th Cir. 1982) (footnote omitted).[22]   In Transpo, the principal defendant was engaged in extensive commercial operations throughout the United States and Canada, and it contracted with the resident Mississippi plaintiff for the carriage of produce, plants, and nursery stock between various points in North America.   Although the defendant initiated activities under the contract from California, "Mississippi was clearly the hub of the parties' activities, from which the Mississippi plaintiff directed at the defendant's order the movement of its trucks throughout the nation." Id. at 2010.

Plaintiff presents evidence that Romanelli made numerous visits to Houston to negotiate an agreement between Global and Plaintiff.[23]   Negotiations were also conducted via phone calls and emails directed at Plaintiff's Houston office.[24]   While a fully

---

[22] *See also* Moncrief Oil Intern. Inc. v. OAO Gazprom, 481 F.3d 309, 312-13 (5th Cir. 2007) ("[O]ur finding of jurisdiction in *Transpo* was supported not only by foreseeability, but also by the fact that the forum state was 'clearly the hub of the parties' activities.' . . . Mere foreseeability, standing alone, does not create jurisdiction.").

[23] Document No. 31, ex. 1 at ¶ 21.

[24] Id.   Defendants assert that the agreement between Global and Plaintiff was not negotiated in Texas, but rather was negotiated through Plaintiff's German lawyer.   Document No. 36 ¶¶ 3(A), 7. Factual conflicts such as this on the present motion must be resolved in Plaintiff's favor. *See* Latshaw, 167 F.3d at 211.   The same rule applies to Defendants' other attempts to impeach

10

executed written contract has not been exhibited, it is undisputed that the parties proceeded under a mutual agreement pursuant to which Plaintiff performed work in Texas and other parts of the United States from its Texas location; Global controlled "access to job requests or work orders" and gave "all direction" to Plaintiff.[25]  Until April 2011, Global sent payments to Plaintiff in Texas.[26]  It was reasonably foreseeable to Global that Plaintiff would perform computer services from its Texas office and, during the year or two of Plaintiff's ongoing work for Global, Texas was in fact the "hub of the parties' activities."  Global thereby purposefully availed itself to the Texas forum such as to subject itself to personal jurisdiction.  *See* Transpo, 681 F.2d at 1011; Latshaw, 167 F.3d at 213 (finding exercise of personal jurisdiction in Texas over Louisiana resident who entered into ongoing relationship with Texas resident and made multiple phone calls and trip to Texas in furtherance of that relationship).

Defendants contend that these contacts are not sufficient to establish specific jurisdiction over Global because Global contracted with Plaintiff at the direction of T-Systems.[27]  This argument is unavailing.  A non-resident contractor may be subject

---

Plaintiff's evidence.  *See* Document No. 36 ¶¶ 3-4.

[25] Document No. 31, ex. 1 ¶ 10.

[26] Id.

[27] Document No. 28 ¶ 33; Document No. 36 ¶¶ 7.

to personal jurisdiction by reason of entering an agreement with a
resident plaintiff subcontractor even if that non-resident
contractor was required by a third party to make the subcontract
with the resident plaintiff. *See* Epcon Indus. Systems, L.P. v.
Progressive Design Inc., Civ. A. No. H-06-4123, 2007 WL 1234928, at
*7 & n.48 (S.D. Tex. April 25, 2007) (Johnson, Mag. J.) (finding
exercise of personal jurisdiction proper even though defendant, a
general contractor, presented three potential subcontractors to
Philip Morris, and Philip Morris selected plaintiff, a resident of
Texas).

Furthermore, Defendants' reliance on Hydrokinetics Inc. v.
Alaska Mechanical, Inc. is misplaced. 700 F.2d 1026 (5th Cir.
1983).[28] In that case an Alaskan company agreed to purchase from
the Texas plaintiff goods manufactured in Texas. Id. at 1027.
Negotiations were initiated by plaintiff. Id. The parties
negotiated the agreement by phone and fax and representatives of
defendant traveled to Texas to inspect plaintiff's facilities. Id.
The Fifth Circuit found that there was no personal jurisdiction
because the defendant's contacts related to a single transaction
requiring unilateral performance by plaintiff in Texas, the
agreement had an Alaskan choice of law provision, and the plaintiff
delivered the goods produced under the contract to Seattle. Id.

---

[28] Document No. 28 ¶ 32.

at 1029.  Unlike <u>Hydrokinetics</u>, the agreement between Global and Plaintiff was not limited to a single transaction, but rather involved an ongoing relationship wherein Global directed Plaintiff's activities to provide services both in Texas and throughout the United States from Plaintiff's location in Texas, the "hub of the parties' activities." *See also* Electrosource, 176 F.3d at 873 (finding personal jurisdiction where Indian defendant sought out plaintiff to acquire technology plaintiff developed in Texas, negotiated for its acquisition in Texas, and agreed that plaintiff would provide training and advice in Texas to defendant's personnel, and distinguishing <u>Hydrokinetics</u> because it involved a single sale of a product and all foreseeable contacts between the parties would cease after delivery).[29]

------

[29] Defendants also contend that this Court lacks personal jurisdiction over Global because Plaintiff is subject to the Master Service Agreement's forum selection clause, which provides for dispute resolution in Germany.  Document No. 36 at 1-2.  To support this contention, Defendants points to an undated, unsigned copy of the Key Agreement, which states that Plaintiff "agrees to be bound by the terms and conditions of the MSA as if it were a party to it."  Document No. 30, ex. 1C ¶ 2.1.  Defendants contend that even though the Key Agreement is unsigned, it governed the course of dealings among the parties.  Document No. 36 at 1-2.  Defendants also point to an email from an employee of Plaintiff stating that Plaintiff's agreement with Global stipulates that Plaintiff will adhere to the terms of the Master Services Agreement.  Document No. 36, ex. 2.  Plaintiff produces evidence that it never agreed to all terms of the Key Agreement and that it was not bound by the Master Services Agreement.  Document No. 31, ex. 1 ¶¶ 6-7.  For purposes of determining whether the exercise of personal jurisdiction is proper, which is the only issue now under consideration, the Court must resolve factual conflicts in Plaintiff's favor.

2.  <u>TRT Pty.'s Minimum Contacts</u>

Plaintiff does not produce evidence that TRT Pty. has sufficient minimum contacts with Texas to support the exercise of personal jurisdiction over it.  Plaintiff's evidence is that TRT Pty. was "involved in the early negotiations process" and Romanelli "initially performed work for T-Systems through TRT Pty., but later either created or opted to use Global to perform the same type of work."[30]  It was Global that entered the Master Services Agreement with T-Systems and subsequently engaged Plaintiff as a subcontractor.[31]  The fact that the two companies share officers is not enough to overcome the presumption of corporate separateness. *See* Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1160 (5th Cir. 1983) ("We have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations. . . . Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes.") (citations omitted). Plaintiff makes no showing that TRT Pty. exercised control over, or was controlled by, Global. Accordingly, Plaintiff has failed to prove a *prima facie* case of personal jurisdiction over TRT Pty. and TRT Pty. will therefore be dismissed.

---

[30] <u>Id.</u> ¶ 11.

[31] <u>Id.</u> ¶¶ 3, 10.

### 3.  <u>Domenic Romanelli's Minimum Contacts</u>

The Court may disregard the corporate form and exercise jurisdiction over an officer if: (1) the corporation is the alter ego of the officer; or (2) the officer allegedly committed an intentional tort directed at the forum.  <u>Id.</u>  Plaintiff does not argue that Romanelli is the alter ego of Global.  Rather, Plaintiff contends that the Court has personal jurisdiction over Romanelli because he committed tortious conduct aimed at Texas.[32]

"[F]or a fraud allegation to provide the basis for the assertion of personal jurisdiction, it must satisfy the particularity requirements of Fed. R. Civ. P. 9(b), specifying the allegedly fraudulent statements, the speaker, when and where the statements were made, and why the statements were fraudulent." Breckenridge Enters., Inc. v. Avio Alts., LLC, No. 3:08-CV-1782-M, 2009 WL 1469808 at *7 (N.D. Tex. May 27, 2009) (footnotes omitted).[33]  In its Complaint, Plaintiff alleges generally that Defendants made material misrepresentations and fraudulently failed to disclose material facts.[34]  These allegations fail to meet the pleading standards of Rule 9(b), and therefore cannot support personal jurisdiction over Romanelli.  <i>See</i> <u>id.</u> (finding fraud

---

[32] Document No. 31 ¶ 17.

[33] <i>See also</i> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[34] Document No. 10 ¶¶ 6.7-6.12.

claims could not support exercise of personal jurisdiction over defendants where Complaint generally alleged that defendants made false statements, but did not identify which statements were fraudulent or when the allegedly fraudulent statements were made). Moreover, Plaintiff produces no evidence to support its contention that Romanelli made false statements, and 'bald assertions' of fraud are insufficient.[35] *See* <u>Southern Bleacher Co., Inc. v. Husco, Inc.</u>, No. 7:01-CV-009-R, 2001 WL 497772, at *5 (N.D. Tex. May 7, 2001) (declining to exercise personal jurisdiction over defendant where plaintiff produced no evidence in support of its allegations of fraud); <u>Burchfield v. Stein</u>, No. Civ. A 3:01-CV-2529, 2002 WL 318341, at *6 (N.D. Tex. Feb. 27, 2002) ("[T]he plaintiff's bare allegations of fraud against the defendants in their 'individual capacities' do not satisfy the *prima facie* requirements for jurisdiction.")[36] Plaintiff has failed to establish that the Court

---

[35] Plaintiff produces evidence that Romanelli made several representations to Plaintiff, including that Global would pay Plaintiff in a timely manner for the work performed. Document No. 31, ex. 1 ¶ 22. However, Plaintiff does not produce evidence that these statements were false when made, or even that these statements were made in communications aimed at Texas.

[36] Plaintiff also asserts a claim for negligent misrepresentation. <u>Id.</u> at ¶ 6.13. However, a claim for negligent misrepresentation must allege a misstatement of existing facts. <u>Moncrief</u>, 481 F.3d at 314. The representations made by Romanelli pertained to future behavior of Global under the parties' arrangement, and therefore personal jurisdiction over Romanelli cannot be premised on Plaintiff's negligent misrepresentation claim. *See* <u>id.</u> (finding plaintiff failed to state a claim of negligent misrepresentation so as to support personal jurisdiction where the alleged misrepresentation concerned defendant's promise to continue to honor the agreement in the future).

has personal jurisdiction over Defendant Romanelli, and Plaintiff's claims against him will be dismissed without prejudice.

### 4. Fair Play and Substantial Justice

Although Global had sufficient contacts with Texas in its dealings with Plaintiff to warrant the exercise of personal jurisdiction, there remains the question of whether it is fair to force Global to litigate in Texas. *See* Electrosource, 176 F.3d at 874 ("The imposition of jurisdiction cannot offend 'traditional notions of fair play and substantial justice.'") (quoting International Shoe, 66 S. Ct. at 158.). The Court considers (1) the burden upon the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in an efficient resolution; and (5) the shared interest of the states in furthering social policies. Electrosource, 176 F.3d at 874.

These factors on balance weigh in favor of maintaining jurisdiction in this Court. Defendants are correct that Global may face a substantial burden if forced to litigate in Texas. But this is not an unfair burden, given that Global reached into Texas to engage in ongoing business in this State with Plaintiff. *See* Epcon Indus. Sys., 2007 WL 1234928, at *8 (burden on Virginia defendant was not unfair where defendant "voluntarily reached into Texas to do business with a Texas company and initiated numerous communications and trips during the performance of the contract.").

17

Furthermore, the burden on Global to litigate in Texas appears no greater than the burden on Plaintiff if it were required to litigate in an overseas forum. *See* id. Texas has a strong interest in litigating breach of contract causes of action brought by Texas residents. Id. Additionally, Texas appears to be the most efficient forum for the resolution of the conflict. Plaintiff performed its work for Global from its Texas office, Global made payments to Plaintiff in Texas, and presumably evidence of Plaintiff's performance of services for Global--for which more than $1 million is claimed--will be located in Houston, which was the hub of the parties' activities. *See* Electrosource, 176 F.3d at 874 (finding Texas was most efficient forum where evidence concerning the alleged breach was located in Texas).[37] In sum, the exercise of personal jurisdiction over Global does not offend traditional notions of fair play and substantial justice.

---

[37] Defendants argue that Germany would be a more efficient forum because "many of the matters at issue are subsumed in an ADR procedure that is being conducted in Germany" between Global and T-Systems, but fails to explain the matters to which it refers, or how litigation in Germany, where neither party has an office, would be more efficient than litigating in Texas, the hub of the parties' activities. *See* Document No. 28 ¶ 49. Finally, Global argues that Plaintiff will not be able to obtain convenient and effective relief in Texas because Global has no assets in Texas, and suggests that Plaintiff would have to enforce its judgment against Global in Singapore. Id. ¶ 48. If so, this is a risk Plaintiff evidently chooses to assume and does not at all deny fair play and substantial justice to Global.

IV.  <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (Document No. 20) is GRANTED as to Defendants Total Risc Technology, Pty. Ltd. and Domenic Romanelli, and Defendants Total Risc Technology, Pty. Ltd. and Domenic Romanelli are DISMISSED without prejudice for lack of personal jurisdiction; and Defendants' Motion is DENIED as to Defendant Total Risc Technology Global Ltd.  It is further

ORDERED that Plaintiff's Motion in the Alternative to Approve Alternative Service (Document No. 32) is DENIED as moot.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 18th day of July, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE